Lunsford v. JBL Communications, LLC, 2021 NCBC 14.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 3973

J. BROOK LUNSFORD and
LUNSFORD GROUP, INC. f/k/a JBL
COMMUNICATIONS, INC.,

        Plaintiffs and
        Counterclaim Defendants,

    v.

JBL COMMUNICATIONS, LLC,

        Defendant and
        Counterclaim Plaintiff,

    v.

CAMERON GUNTER; CLIFFORD
CHURCHILL; FIBER OPTIC
SOLUTIONS LLC; PIMLICO, INC;
OSPREY COMMUNICATIONS, LLC;
CVO ENTERPRISES INC; and
RUSSELL BROWN,

        Counterclaim
        Defendants.

**ORDER AND OPINION ON JBL
COMMUNICATIONS, LLC'S SECOND
MOTION FOR SANCTIONS AGAINST,
AND CONTEMPT NOTICE TO,
J. BROOK LUNSFORD AND
LUNSFORD GROUP, INC.**

1.    This decision concerns JBL Communications, LLC's ("New JBL") second motion for discovery sanctions and contempt against J. Brook Lunsford and Lunsford Group, Inc. ("Old JBL") (together, "Plaintiffs"). (ECF No. 127.) For the following reasons, the Court **GRANTS** the motion in part and **DENIES** it in part.

*Pearce Law PLLC, by Bradley E. Pearce, for Plaintiffs/Counterclaim Defendants J. Brook Lunsford and Lunsford Group, Inc.*

*Parker Poe Adams & Bernstein LLP, by Michael G. Adams, Jami J. Farris, and Morgan H. Rogers, for Defendant/Counterclaim Plaintiff JBL Communications, LLC.*

*Law Offices of Jamie A. Stokes, PLLC, by Jamie A. Stokes, for Counterclaim Defendants Cameron Gunter, Clifford Churchill, Fiber*

*Optic Solutions LLC, Pimlico, Inc., CVO Enterprises Inc., and Russell Brown.*

*O'Hagan Meyer, PLLC, by Wood W. Lay and Aretina K. Samuel-Priestley, for Counterclaim Defendant Osprey Communications, LLC.*

Conrad, Judge.

## I.
## FINDINGS OF FACT

2. This action arises out of the sale of a telecommunications company. For many years, Old JBL provided services related to fiber-optic telecommunications systems and networks. Its sole shareholder is Lunsford. In July 2018, Old JBL sold its assets to New JBL. As part of the deal, Lunsford and Old JBL agreed not to compete against New JBL after the sale. In September 2019, Lunsford sued New JBL for breach of the asset purchase agreement, later adding Old JBL as a plaintiff. New JBL then counterclaimed, alleging that Lunsford and Old JBL violated the restrictive covenants. Earlier orders describe the allegations and claims in more detail. *See generally Lunsford v. ViaOne Servs., LLC*, 2020 NCBC LEXIS 111 (N.C. Super. Ct. Sept. 28, 2020); *Lunsford v. ViaOne Servs., LLC*, 2020 NCBC LEXIS 127 (N.C. Super. Ct. Oct. 28, 2020).

3. Within days of receiving the complaint, New JBL served discovery requests on Lunsford. (*See* Aff. Rogers ¶ 5, Ex. 2, ECF Nos. 81, 81.2.) Lunsford missed his deadline to respond, prompting New JBL to submit a discovery dispute under Business Court Rule ("BCR") 10.9. The parties resolved the dispute among themselves when Lunsford served late responses in which he agreed to produce relevant documents. (*See* Aff. Rogers Ex. 3, ECF No. 81.3.)

4.      Around the same time, Lunsford amended the complaint and added Old JBL as a plaintiff.  History repeated: New JBL served discovery requests on Old JBL in January 2020, and Old JBL missed its deadline to respond.  (*See* Aff. Rogers Exs. 1, 4, ECF Nos. 81.1, 81.4.)  New JBL did not immediately submit another discovery dispute.

5.      Over the next few months, the parties worked out an agreement to modify the pleadings.  Lunsford and Old JBL amended the complaint for a second time. (ECF No. 52.)  New JBL also filed counterclaims against not only Old JBL and Lunsford but seven new parties as well.  (ECF No. 44.)  The new counterclaim defendants included companies allegedly related to Lunsford: Fiber Optic Solutions LLC, Pimlico, Inc., Osprey Communications, LLC, and CVO Enterprises Inc. Communications involving these four companies were among the targets of New JBL's pending discovery requests to Lunsford and Old JBL.

6.      In June 2020, New JBL submitted a second BCR 10.9 dispute.[1]  It contended that Old JBL's discovery responses were long overdue and that Lunsford had not produced any documents as he had promised some six months earlier.  (*See* Aff. Rogers Ex. 1.)  Plaintiffs did not submit a timely response to the dispute summary. *See* BCR 10.9(b)(1).

7.      When the Court convened a telephone conference, "counsel for Plaintiffs confirmed that Lunsford ha[d] not served responsive documents and that Old JBL

[1] From March 16 until June 1, nearly all deadlines in civil cases in North Carolina were stayed due to the coronavirus pandemic.  Old JBL's responses were already weeks overdue when the stay went into effect, and Old JBL did not serve its responses when the stay lifted on June 1.  At that point, New JBL submitted its second discovery dispute.

ha[d] not served written responses or documents." (Order on BCR 10.9 Discovery Dispute ¶ 5, ECF No. 74 ["BCR 10.9 Order"].) Regarding Lunsford's production delay, counsel cited an unexpected need to switch forensic experts and stated that some documents could not be produced because they were outside Lunsford's custody and control. Regarding Old JBL, counsel gave no reason for failing to serve responses. Instead, he expressed confusion about how to respond to a few requests that, because of their age, referred to the original or amended complaints rather than the second amended complaint and counterclaims. (*See* BCR 10.9 Order ¶ 5; Aff. Rogers ¶ 7.)

8. Formal briefing would have been costly, inefficient, and of no value, so the Court decided the dispute on June 17 without further proceedings. *See* BCR 10.9(b)(3). First, the Court ordered Old JBL to serve its overdue responses. Second, given that the discovery requests had been outstanding for at least five months and as many as nine months, Plaintiffs were required to provide a date certain by which they would produce all responsive documents. Third, Lunsford had to supplement his responses to make clear which documents he would produce, which he refused to produce, and which he could not produce for custody or other reasons. The Court directed Plaintiffs to do so by June 24. (*See* BCR 10.9 Order ¶ 7.)

9. As of June 24, Old JBL had served its overdue written responses, but Lunsford had not supplemented his responses to clarify what he would, would not, or could not produce. (*See* Aff. Rogers ¶¶ 9, 18.) Although Plaintiffs agreed to produce a few of Old JBL's documents by July 3, they did not say when they would produce the bulk of their responsive documents. (*See* Aff. Rogers ¶¶ 10, 17, 19.)

10. Citing noncompliance with the BCR 10.9 Order, New JBL moved for sanctions. (ECF Nos. 79, 80.) On July 21, the same day that Plaintiffs filed their opposition to the sanctions motion, Lunsford supplemented his discovery responses—nearly a month after the court-ordered deadline. (*See* ECF No. 95 at 4; 2d Aff. Rogers ¶¶ 11–13, ECF No. 94.) While the motion was being briefed, Plaintiffs also produced a handful of documents in a largely unreadable format that did not comply with the parties' protocol for discovery of electronically stored information ("ESI"). (*See* ECF No. 95 at 3–5; 2d Aff. Rogers ¶¶ 6–22.) Plaintiffs gave no timeframe to produce anything else. At a hearing in early August, it became clear that they could not give a timeframe because, by their own admission, they had not even begun to search for and retrieve information from at least one mobile device and several e-mail accounts, even though it was undisputed that all likely held responsive information.

11. On August 24, the Court granted New JBL's motion (the "Sanctions Order"). (*See* ECF No. 98 ["Sanctions Order"].) Although Plaintiffs conceded that they had failed to comply with the BCR 10.9 Order, they sought to excuse their noncompliance because of unforeseen events. The Court disagreed, observing that

> the events cited by Plaintiffs began on June 26—two days after the court-ordered deadline. The violations had already occurred. If Plaintiffs were concerned about their ability to cure the violations in a reasonable time, they could have asked New JBL for extra time or sought relief from the Court. They did neither. And in any event, when it comes to ESI, Plaintiffs have only themselves to blame. To comply [with the BCR 10.9 Order], all Plaintiffs had to do was assess how long it would take to produce that information and then give New JBL a date certain. Yet Plaintiffs did not even attempt to determine how long it would take to preserve, search for, and produce information from Lunsford's e-mail accounts and one of the two mobile devices. That had nothing to do with external forces: at the hearing, Plaintiffs' counsel stated that he simply did not think to do so.

(Sanctions Order ¶ 4.) As of the date of the Sanctions Order, the discovery requests served on Old JBL had been pending for seven months and those served on Lunsford had been pending for eleven months. The Court concluded that

> Plaintiffs have had ample time to investigate sources of responsive data and documents, to preserve them, and to produce them. Plaintiffs have also had ample time to assess the resources and time needed to comply with New JBL's discovery requests. Even so, Plaintiffs failed to meet discovery deadlines and, now, have failed to meet court-ordered deadlines.

(Sanctions Order ¶ 5.)

12. As a sanction, the Court required Plaintiffs to pay New JBL's reasonable expenses caused by the noncompliance. (*See* Sanctions Order ¶ 10.) And because Plaintiffs "balked at the chance to" set a production deadline of their own choosing, the Court imposed a thirty-day deadline (September 23) to complete production in a manner consistent with the ESI protocol. (Sanctions Order ¶¶ 8, 9, 13(b).) When asked at the hearing whether thirty days would be reasonable, Plaintiffs' counsel did not object and represented that they had retained vendors to assist with ESI. (*See* Sanctions Order ¶ 3.) Given these assurances, the Court found "no reason to believe that thirty days is an unreasonable period [for Plaintiffs] to complete their production." (Sanctions Order ¶ 8.)

13. Plaintiffs did not produce any documents over the next thirty days—and have not produced any since. On the last day of the compliance period, Plaintiffs sought and received a one-week extension. (*See* ECF No. 101.) At the end of that week, they sought a similar extension, then another. (*See* ECF Nos. 104, 107.) They stated that collecting the data—equating to over 160,000 pages—had taken longer than expected and that the extra time would "minimize issues that could arise

regarding matters such as the duplication of documents." (ECF No. 101 at 3.) Two of the extension requests were untimely—meaning that the compliance period expired and needed to be reopened—or violated other procedural rules. But because New JBL consented to each request, the Court granted them with a warning to follow the rules going forward. (*See* ECF Nos. 102, 106, 109.) The extensions pushed the deadline to October 19, which gave Plaintiffs nearly two months to review and produce documents as required by the Sanctions Order and nearly four months to make progress since the BCR 10.9 Order.

14. In the late afternoon of October 19, Plaintiffs filed a fourth motion and sought extraordinary relief: an ex parte order indefinitely suspending the deadline to comply with the Sanctions Order. (*See* ECF No. 113 at 4.) For the first time, Plaintiffs argued that two months was not enough time to perform their document review and that counsel for the other counterclaim defendants needed to review some of the documents before they could be produced. (*See* ECF No. 113 ¶¶ 2, 7.) Plaintiffs gave no reason why they could not have raised these issues in the first three motions (or, indeed, at the hearing on the sanctions motion). In addition, their motion again failed to comply with this Court's rules.[2] Having already warned Plaintiffs to follow

---

[2] The Business Court Rules require motions to reflect consultation with and the position of opposing counsel. *See* BCR 7.3. In connection with Plaintiffs' third motion for extension of time, New JBL refused to consent to an extension beyond October 19. Although Plaintiffs undoubtedly planned to seek a longer extension, they did not say so at the time. Instead, they waited until the waning hours of October 19 to file their fourth motion, gave no notice to New JBL, and then pressed the Court to grant extraordinary relief without even hearing from New JBL. The consultation requirement exists, in part, to avoid manufactured emergencies like this.

the rules, the Court denied the motion the same day without prejudice. (ECF No. 114.)

15. Three days later, Plaintiffs filed a renewed motion and asked to extend the compliance period, since expired, to November 25. (ECF No. 115.) This motion, like its predecessor, ignored the Business Court Rules and the Court's admonitions to follow them. Rather than delay matters by issuing another denial without prejudice, the Court invited New JBL to respond. (ECF No. 117.) New JBL argued that Plaintiffs had made no meaningful progress toward meeting their discovery obligations and that the continued delays were causing prejudice. (ECF No. 120.) Concluding that Plaintiffs had not shown good cause or excusable neglect to reopen and extend the deadline, the Court denied their request. (ECF No. 121.)

16. In the same order, the Court established a framework for trying to resolve these ongoing discovery issues. The Court directed counsel for Plaintiffs and New JBL to "meet and confer in good faith to discuss a schedule for the prompt and efficient production of the documents" and ordered Plaintiffs to e-mail the Court "a proposed schedule for starting and completing [their] document production." In addition, the Court stated that it would hold a status conference and instructed counsel to be prepared "to advise the Court about the feasibility of a rolling production," among other things. (ECF No. 121.)

17. In an e-mail on November 6, Plaintiffs' counsel stated that he "*may* be able to produce documents from different 'data sets' on a rolling basis." (ECF No. 134 at 1.) Plaintiffs' counsel then "propose[d] the following production schedule":

a. Production of Mr. Lunsford's original documents by November 17
b. Production of CVO-native documents by November 23
c. Production of Pimlico-native documents by November 30
d. Production of FOS (Fiber Optic Solutions)-native documents and any remaining documents by December 7.

(ECF No. 134 at 1 (emphasis omitted).)[3]

18.    It is clear that Plaintiffs did not believe that they could meet this schedule when they proposed it. At a status conference also on November 6 (by then ten weeks after the Sanctions Order), Plaintiffs' counsel acknowledged that he had spent little time on document review and could not guarantee production by any date. (*See* Br. in Supp. 4, ECF No. 128.) At New JBL's suggestion, Plaintiffs were considering whether to hire a document review vendor but had not yet solicited quotes. (*See* Opp'n 5–6, ECF No. 130.) The Court urged Plaintiffs to act quickly, scheduled a second conference for the following week, and instructed them to provide an interim update before then.

19.    In an e-mail on November 9, Plaintiffs' counsel stated that they had "agreed in principle" to hiring a document review vendor. (ECF No. 133.) During a status conference on November 13, counsel reported that the only step he had taken was to fill out an online contact form for a vendor named Tower. (*See* Br. in Supp. 5.) Apart from that, Plaintiffs made no progress because their counsel had spent his time on other cases and had paused document review in this case. The Court again urged

---

[3] These four "data sets" are Plaintiffs' own description of the relevant documents that are responsive to New JBL's discovery requests. Counsel for Plaintiffs did not describe the data sets in more detail or clarify how large each set was. It appears that many, but not all, of the documents were retrieved from Lunsford's e-mail accounts associated with the other counterclaim defendants. Plaintiffs have not asserted that any of the documents are outside their custody and control.

Plaintiffs to expedite their review and requested a status report before the Thanksgiving holiday.

20. On November 19, New JBL filed this second motion for sanctions and civil contempt on the ground that Plaintiffs had not produced any documents since the Sanctions Order. (ECF Nos. 127, 128.) In addition to their undisputed failure to comply, New JBL argued, Plaintiffs had also missed their self-proposed starting date for a rolling production and had given repeated false assurances that they would soon be ready to produce documents. (*See* Br. in Supp. 2–6, 8–9.)

21. The next day, Plaintiffs abandoned their proposed production schedule and their intent to retain a vendor. By e-mail, Plaintiffs' counsel stated that they had collected over 160,000 documents, not 160,000 pages as reported six weeks earlier. (ECF No. 135 at 2.) Plaintiffs rejected the quote from Tower as too expensive. (ECF No. 135 at 1.) Counsel further stated that Plaintiffs had no immediate plans to produce documents and that they intended to obtain new vendor quotes—but only after reducing the number of documents to review by applying search terms, which they had not yet selected or sent to New JBL's counsel. (ECF No. 135 at 2.)

22. Almost two months later, on January 11, 2021, the Court held a conference to discuss the case calendar, long since obsolete due to the ongoing discovery delay.[4] When the Court asked about the status of Plaintiffs' document production, the parties

---

[4] At this conference, New JBL's counsel stated that it had become aware of an e-mail account believed to be Lunsford's but that had not been disclosed. The Court ordered supplemental briefing. Circumstantial evidence suggests that Lunsford used the account, but he testified by affidavit that he did not create the account and does not recall sending e-mails from it. (*See* ECF No. 158.) On the current record, it is unclear whether Plaintiffs concealed the account. If evidence of concealment arises, the Court may revisit this matter.

reported that they had largely agreed to search terms. Although Plaintiffs had not retained a document review vendor, their counsel stated that some documents would be given to New JBL within a week. These documents were not produced, and Plaintiffs' counsel now denies having said that any would be. In an e-mail on January 19, Plaintiffs' counsel reported a decision to hire Tower—the same vendor Plaintiffs had contacted over two months earlier—and that the document review would take twelve weeks. To accommodate the delay, the Court extended the discovery period and the rest of the case calendar by seven months. (*See* ECF No. 163.)

23. On February 3, the Court held a hearing on New JBL's second motion for sanctions. In response to questions from the Court, Plaintiffs' counsel and New JBL's counsel both confirmed that Lunsford and Old JBL had produced no documents since the small, partial productions the previous July. Tower's twelve-week review was to begin on February 8, a full twenty-four weeks after the Sanctions Order. Plaintiffs' counsel also admitted, among other things, that he never had a reasoned basis for assuring the Court and New JBL that production would occur within thirty days of the Sanctions Order, by the end of any of the requested extensions, or by the proposed rolling production dates. Each assurance, he said, was based on "blind optimism."

24. The second motion for sanctions is now ripe for disposition.

## II.
## CONCLUSIONS OF LAW

25. New JBL contends that sanctions are appropriate under Rules 37 and 41 of the North Carolina Rules of Civil Procedure and the Court's inherent authority. Among other things, New JBL asks the Court to strike Plaintiffs' pleadings, dismiss

the second amended complaint, and order Plaintiffs to pay New JBL's reasonable expenses. New JBL also seeks to hold Plaintiffs in civil contempt.

A. Rule 37 Sanctions

26. If a party "fails to obey an order to provide or permit discovery," the Court may order a variety of sanctions against that party. N.C. R. Civ. P. 37(b)(2). Permissible sanctions "include, but are not limited to, the establishment of facts, the exclusion of evidence, the striking out of pleadings or parts thereof, or the dismissal of an action." *Red Valve, Inc. v. Titan Valve, Inc.*, 2019 NCBC LEXIS 57, at *41 (N.C. Super. Ct. Sept. 3, 2019) (citing Rule 37(b)(2)).

27. Trial courts have "broad discretion" when it comes to sanctions. *Feeassco, LLC v. Steel Network, Inc.*, 264 N.C. App. 327, 337 (2019) (quoting *Batlle v. Sabates*, 198 N.C. App. 407, 417 (2009)). It is essential to consider "less severe sanctions" before choosing dismissal or entry of judgment. *Id.*; *see also Kixsports, LLC v. Munn*, 2019 NCBC LEXIS 62, at *26–27 (N.C. Super. Ct. Sept. 30, 2019). But even the most severe sanctions, including terminating sanctions, are appropriate "so long as that sanction is among those expressly authorized by statute and there is no specific evidence of injustice." *Feeassco*, 264 N.C. App. at 337 (cleaned up).

28. The party requesting sanctions need not "demonstrate, as a part of its burden, that it suffered prejudice as a result of the opposing party's discovery failures or that the opposing party acted willfully." *Red Valve*, 2019 NCBC LEXIS 57, at *41 (quoting *Tumlin v. Tuggle Duggins P.A.*, 2018 NCBC LEXIS 51, at *31 (N.C. Super. Ct. May 22, 2018)); *see also Clark v. Penland*, 146 N.C. App. 288, 291 (2001). Though

not required to find willfulness, bad faith, or prejudice before imposing sanctions, the Court is free to consider those factors when deciding which sanctions to impose. *See Red Valve*, 2019 NCBC LEXIS 57, at *41–42; *see also Ray v. Greer*, 212 N.C. App. 358, 363 (2011).

29. It is undisputed that Plaintiffs failed to obey the Sanctions Order. The Court directed Plaintiffs to complete their belated document production within thirty days, later expanded to almost sixty, based on assurances from their counsel that it was a reasonable amount of time. Not only did Plaintiffs fail to complete their production by the court-ordered deadline, they have yet to produce a single document in the six months that have elapsed since the Sanctions Order.

30. As best the Court can tell from the opposition brief, Plaintiffs seek to avoid sanctions on the ground that they have tried diligently to cure their noncompliance. (*See* Opp'n 4 (disputing "false picture of . . . foot dragging").) The record shows exactly the opposite. Weeks after the compliance period expired, Plaintiffs' counsel acknowledged that he had spent little time on document review and that he had prioritized other cases over this one. At the same time, and for several months, Plaintiffs resisted the idea of retaining a document review vendor.[5] Likewise,

---

[5] Plaintiffs suggest that their reluctance was New JBL's fault. It was not. As a courtesy after the compliance period expired, New JBL gave Plaintiffs an estimate of what a vendor might charge. The estimate was based on the number of documents that Plaintiffs said they had collected, which turned out to be mistaken. When Plaintiffs obtained a more expensive quote based on the correct, larger volume of documents, they accused New JBL of misleading them about the cost. (*See* Opp'n 5.) All this episode shows is that Plaintiffs had not performed even the most basic diligence to know how many documents they had collected. Furthermore, nothing prevented Plaintiffs from obtaining vendor quotes on their own initiative before expiration of the compliance period.

although a rolling or incremental production seemed feasible, they resisted that too. Indeed, it appears that Plaintiffs did nothing to accelerate their efforts.

31. Although it is welcome news that Plaintiffs have retained a document review vendor in recent weeks, they did so three months after the compliance period ended and two months after New JBL filed this motion. Having shown no urgency to cure their noncompliance, their recent progress is not a mitigating factor. *See Cheek v. Poole*, 121 N.C. App. 370, 373 (1996) (affirming sanction of dismissal and observing that "untimely discovery responses served *after* the service of a motion seeking sanctions on this basis can support sanctions" (citation omitted)); *see also Brown v. Liberty Mut. Ins. Co.*, No. COA01-1578, 2003 N.C. App. LEXIS 390, at *9–15 (N.C. Ct. App. Jan. 21, 2003); *State ex rel. Griffin v. Beasley*, No. COA01-927, 2002 N.C. App. LEXIS 2078, at *9 (N.C. Ct. App. June 4, 2002).

32. At the hearing, Plaintiffs' counsel pleaded inexperience with the complexities of ESI discovery and a need to coordinate with counsel for the other counterclaim defendants. Neither is an excuse. At every step, the Court invited Plaintiffs to set the pace. The BCR 10.9 Order, for example, allowed them to choose their own production deadline. They could have offered a date that factored in the size of the potential production and the ESI learning curve. Instead, they balked, prompting the Court to impose a deadline in the Sanctions Order. Even then, the Court asked Plaintiffs' counsel whether a thirty-day deadline was reasonable. Counsel assured the Court that it was. When that deadline approached, Plaintiffs asked for extensions measured in days, not months, to finish the job. And after the

compliance period expired, the Court again asked Plaintiffs to propose a production schedule they could meet. Plaintiffs cannot justify their habitual failure to live up to their own estimates of the time needed to meet their discovery obligations as a lack of sophistication. It shows, instead, an unjustified lack of diligence.

33. It also shows a lack of candor. At different times, Plaintiffs assured partial or complete production by September 23, October 2, October 9, October 19, November 17, November 23, November 30, and December 7. Their counsel now concedes that they had no reasoned basis for assuring compliance by any of these dates. They had not, for example, begun reviewing documents or obtaining quotes from vendors. (*See* Opp'n 6.) In counsel's words at the hearing, he offered "pie in the sky" dates based on "blind optimism." Even worse, counsel suggested that he proposed dates or concurred with them because he thought it was what the Court wanted to hear. This is disturbing. When the Court asks for counsel's guidance, it expects probity, not propitiation.

34. Simply put, Plaintiffs have had more than a fair shake. As of the date of the Sanctions Order, they had already had "ample time" to investigate sources of discovery and assess the resources needed to meet their obligations. (Sanctions Order ¶ 5.) What was true then is undeniable now. Plaintiffs have not justified their noncompliance or their failure to cure their noncompliance for over six months. Sanctions are necessary to alleviate the prejudice to New JBL and to preserve the integrity of the judicial process.

35.  **Evidence Preclusion.**  Plaintiffs' clear, flagrant, and undisputed failure to obey the Sanctions Order merits severe sanctions.  The Court concludes that it is appropriate to sanction Plaintiffs by prohibiting them from introducing evidence to support their claims and defenses against New JBL and to oppose New JBL's defenses and counterclaims against them.  *See* N.C. R. Civ. P. 37(b)(2)(b).

36.  The Court has considered lesser sanctions and finds them to be insufficient.  This is Plaintiffs' second failure to obey a discovery order.  The relatively light sanctions imposed after the first violation appear to have had no effect.  Since that time, Plaintiffs have shown a casual disregard for court orders and rules alike.  Although the Court need not make a finding of willfulness in imposing sanctions, the record supports such a finding, particularly given Plaintiffs' lack of candor and indifference toward obeying court orders.

37.  The prejudice from Plaintiffs' dilatory conduct is also obvious.  It has been roughly six months since the Sanctions Order and eight months since the BCR 10.9 Order.  New JBL served its discovery requests on Old JBL more than a year ago and on Lunsford almost a year and a half ago.  Apart from a small number of virtually unreadable documents, Plaintiffs have produced nothing.  This wholesale failure to engage in discovery has upended the case calendar, pushing out discovery deadlines by seven months.  It has also kept New JBL from taking depositions and almost certainly thwarted the parties' mediation.  All the while, the clock is running on the restrictive covenants at the heart of New JBL's counterclaims.  *See, e.g.*, *Michael v. Liberty*, 547 F. Supp. 2d 43, 46 (D. Me. 2008) (imposing evidence preclusion when

defendant's unexcused discovery failures "demonstrate[d] a troubling lack of respect for the judicial process" and caused plaintiff to be unable to conduct depositions or obtain documents such that "it would be unfair to allow [defendant] to present evidence" (citation and quotation marks omitted)).

38. Plaintiffs have built a record of disobedience, disregard for the judicial process, and prejudice to their adversary. Numerous cases support the imposition of evidence preclusion as a sanction in these circumstances. *See, e.g., GE Betz, Inc. v. Conrad*, 231 N.C. App. 214, 238 (2013) (affirming evidence preclusion when the "the record is rife with [defendant's] efforts to evade [plaintiff's] requests for evidence . . . , including contravention of three separate orders to compel"); *Deans v. Terry*, No. COA04-495, 2005 N.C. App. LEXIS 425, at *12 (N.C. Ct. App. Mar. 1, 2005) (affirming evidence preclusion when "[t]he record exhibits a longstanding pattern of disobedient conduct and numerous incidents of defendant's failure to comply with discovery requests").[6]

---

[6] *See also, e.g., In re Pedestrian Walkway Failure*, 173 N.C. App. 254, 268 (2005) (affirming evidence preclusion when plaintiff failed to produce documents, the absence of which prejudiced defendants' ability to defend themselves); *Zubaidi v. Earl L. Pickett Enters., Inc.*, No. COA05-1582, 2006 N.C. App. LEXIS 1809, at *12 (N.C. Ct. App. Aug. 15, 2006) (affirming evidence preclusion when "[t]he record indicates that defendants had made repeated requests for these documents and that the trial court had ordered plaintiffs to bring them to their depositions, which they did not do"); *Rabb v. Amatex Corp.*, 769 F.2d 996, 1000 (4th Cir. 1985) (observing that "[a] trial court may preclude evidence . . . even if to do so is tantamount to a . . . dismissal" (citations omitted)); *Certain Underwriters at Lloyd's, London Subscribing to Pol'y No. B0823PP1308460 v. AdvanFort Co.*, No. 1:18-cv-1421, 2019 U.S. Dist. LEXIS 124572, at *21–22 (E.D. Va. July 25, 2019) (imposing evidence preclusion to serve as a future deterrent when defendants failed to turn over "requested basic information that is central to the present dispute" and "forced Plaintiffs to continue taking discovery and litigating this case when earlier, more complete disclosures may have helped resolve this case much sooner"); *Momentum Luggage & Leisure Bags v. Jansport, Inc.*, No. 00 CIV. 7909, 2001 U.S. Dist. LEXIS 760, at *6 (S.D.N.Y. Feb. 1, 2001) (imposing evidence preclusion when "[p]ermitting the plaintiff to conduct this litigation without regard to the requirement that it

39. **Order Compelling Discovery.** Plaintiffs have a continuing and unfulfilled duty to meet their discovery obligations. Therefore, the Court will again compel production of responsive documents. At the hearing, counsel stated that Plaintiffs had signed a contract with Tower for document review to begin on February 8, 2021. This process is expected to take twelve weeks. Based on these representations, the Court directs Plaintiffs to produce all responsive, nonprivileged documents by May 10, 2021. The Court concludes that this deadline is reasonable and gives Plaintiffs ample time to fully meet their obligations.

40. **Monetary Sanctions.** Monetary sanctions are also in order. By rule, "the court shall require the party failing to obey the order to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." N.C. R. Civ. P. 37(b)(2)(flush). Plaintiffs' failure was not substantially justified, and there are no circumstances making an award of expenses unjust. As such, an award of expenses is mandatory. *See Red Valve*, 2019 NCBC LEXIS 57, at \*75; *Bradshaw v. Maiden*, 2018 NCBC LEXIS 46, at \*21–22 (N.C. Super. Ct. May 9, 2018).

41. **More Severe Sanctions.** The Court declines to impose additional or more severe sanctions. New JBL suggested that the Court should treat as established the facts that Plaintiffs conspired with the counterclaim defendants to breach the asset purchase agreement and the consulting agreement, including the restrictive

fulfill its own discovery obligations in good faith and in a timely manner, unfairly increases the burden on [defendant] and the Court").

covenants, as alleged in New JBL's counterclaims. But that sanction would not be appropriate because it might prejudice the other counterclaim defendants by opening the door to an unfair inference that they too were involved in the conspiracy.

42. New JBL has also asked the Court to strike Plaintiffs' pleadings and dismiss their claims. The Court concludes, instead, that evidence preclusion strikes the proper balance. Plaintiffs should take heed that if they fail to comply with this Order, only the most severe sanctions remain. *See, e.g., Kandey Co. v. Barbera*, No. 11CV478A, 2012 U.S. Dist. LEXIS 185364, at *9–12 (W.D.N.Y. Dec. 17, 2012) (striking pleadings and entering default judgment when evidence preclusion sanctions had already been imposed but defendants continued to fail to produce discovery).

## B. Rule 41 and Civil Contempt

43. Under Rule 41, the Court may dismiss an action or any claim "[f]or failure of the plaintiff . . . to comply with these rules or any order of court." N.C. R. Civ. P. 41(b). For the same reasons discussed with respect to terminating sanctions under Rule 37, the Court similarly concludes that it will not dismiss Plaintiffs' claims under Rule 41.

44. New JBL has also moved to hold Plaintiffs in civil contempt. But the Court concludes that doing so "would serve no useful purpose in this case." *Am. Transp. Grp. Ins. Risk Retention Grp. v. MVT Ins. Servs., Inc.*, 2021 NCBC LEXIS 11, at *24 (N.C. Super. Ct. Feb. 2, 2021). The purpose of civil contempt is to ensure compliance, not to punish, and the Court's "only means of compelling compliance of a person found

in civil contempt is imprisonment for as long as the civil contempt continues." *Id.* (citations omitted). Because the Court has set a new deadline for document production, imprisoning Plaintiffs for violating the Sanctions Order would be punitive, not remedial. *See Teachey v. Teachey*, 46 N.C. App. 332, 334 (1980) (observing that the "present ability to comply" is required to hold a party in civil contempt (citation omitted)); *see also* N.C.G.S. § 5A-21(3).

## III.
## CONCLUSION

45. For all these reasons, the Court **GRANTS** New JBL's motion in part and **ORDERS** as follows:

a. Plaintiffs shall pay to New JBL its reasonable expenses, including attorney's fees, caused by the failure to obey the Sanctions Order. The Court encourages the parties to stipulate to this amount. To that end, Plaintiffs and New JBL shall meet and confer in good faith no later than March 10, 2021. If the parties reach agreement, they shall jointly submit their stipulation to the Court for its approval by March 17, 2021. If the parties cannot agree, then New JBL may file its fee petition and supporting evidence by March 17, 2021. Plaintiffs shall then have until March 31, 2021, to file any objections. The petition and response each may not exceed 2,500 words. No reply brief is permitted.

b. No later than May 10, 2021, Plaintiffs must serve all nonprivileged documents that are responsive to New JBL's First Set of Interrogatories and Requests for Documents to Lunsford and to Old JBL, accompanied by a

privilege log conforming to Rule 26(b)(5), and must file a certification to that effect. The production must fully comply with the parties' ESI protocol. Extensions will not be granted absent a showing of extraordinary good cause. The Court admonishes Plaintiffs not to wait until the eleventh hour to request an extension.

c.  For the remainder of this action (including but not limited to any motion for summary judgment or trial), Plaintiffs are prohibited from supporting any of their affirmative claims or defenses or opposing any of New JBL's counterclaims or defenses. Plaintiffs are prohibited from introducing evidence on any matter pertaining to their affirmative claims and defenses or pertaining to Plaintiffs' counterclaims and defenses.

d.  Failure to comply with this Order may be treated as contempt of court and may result in the imposition of terminating sanctions.

e.  In all other respects, the Court **DENIES** New JBL's motion.


    **SO ORDERED**, this the 3rd day of March, 2021.


                        /s/ Adam M. Conrad
                        Adam M. Conrad
                        Special Superior Court Judge
                         for Complex Business Cases